# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **FENIX CONSTRUCTORS, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 07-CV-712-TCK-SAJ |
| | ) |
| **STEVEN ALPHONSO JACKSON,** | ) |
| **et al.** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Before the Court is the Objection of Love Funding Corporation ("Love") to Report and Recommendation (Doc. 89), wherein Love objects to Judge Joyner's recommendation to deny its motion to compel arbitration ("Motion") (Doc. 57). Pursuant to Federal Rule of Civil Procedure 72(b), the Court has reviewed the record *de novo*. This included review of the Report and Recommendation of Judge Sam A. Joyner ("Report"), the briefing on Love's objection, the underlying briefing on Love's Motion, and all exhibits attached thereto. After thorough consideration, the Court finds no reason either in law or in fact to depart from the recommendation of Judge Joyner that the Motion be denied. In addition to the reasoning set forth in the Report and provided by Judge Joyner at the hearing conducted on July 30, 2008, the Court provides the following reasons for denying the Motion.

**I.    Background**[1]

This action was initiated by Plaintiff Fenix Constructors, Inc. ("Fenix") in order to recover funds allegedly due for construction work performed on the Legacy at Riverview Apartments

---

[1] The facts of this case are complex. In this Order, the Court has set forth the minimum facts necessary to resolve Love's objection.

("Apartments") pursuant to Fenix's construction contact with Defendant Legacy at Riverview Foundation ("Legacy"). Fenix also sued Love, a funding corporation involved with financing the rehabilitation of the Apartments, alleging that Love wrongfully refused to advance funds to Legacy for payment of Fenix. Legacy asserted a cross-claim against Love ("Cross-claim"), also alleging that Love wrongfully refused to advance funds to Legacy for payment to Fenix.

Love moved to compel arbitration of the Cross-claim pursuant to an arbitration provision contained in paragraph 10 of a letter dated August 13, 2003 ("8/13/03 Letter"). The 8/13/03 Letter, also referred to as the "Engagement Letter," was written by a chief underwriter at Love to the President of Continental Foundation Oklahoma (Tulsa I), LLC ("Continental"). The Engagement Letter set forth Love and Continental's "understanding and agreement concerning the preparation and filing by [Love] of an application and HUD underwriting to obtain a firm commitment from the Oklahoma City, Oklahoma HUD office to insure a mortgage loan on the above referenced project." Love agreed to prepare an "application and underwriting package in accordance with applicable HUD regulations and requirements" and to "monitor progress" of the HUD application. Paragraph 10 of the 8/13/03 Letter provides: "Both parties agree to the use of binding arbitration to resolve any claim for damages related to this agreement or from performance arising from this agreement."

On March 29, 2004, Legacy was formed as a not-for-profit corporation. Continental and Legacy share the same President. On September 12, 2005, Love obtained a commitment from HUD to insure a mortgage loan on the Apartments in the amount of $16,441,000, and Love was paid the sum of $287,728 for its services. Thereafter, Love, Legacy, the Tulsa County Industrial Authority, and the Bank of Oklahoma entered into a Financing Agreement. Pursuant to Paragraph 3.01 of the Financing Agreement, Love agreed to "make loan advances" to Legacy. Love and Legacy also

entered into an agreement known as the Building Loan Agreement ("BLA"), which is defined in the Financing Agreement as an agreement "to be entered into on or prior to Initial Endorsement between the Owner and the Lender regarding construction advances." On January 12, 2007, Legacy alleges to have submitted a request for a construction advance in order to pay Fenix. The Cross-claim alleges that Love wrongfully denied this request.

Judge Joyner concluded that Paragraph 10 of the 8/13/03 Letter did not mandate arbitration of the Cross-claim because (1) the 8/13/03 Letter was a separate transaction to which Legacy was not a signatory and therefore its terms were not meant to be applied to subsequent disputes or issues raised or alleged by Legacy against Love; (2) the terms of the 8/13/03 Letter were not binding upon Legacy; and (3) the terms and conditions of the 8/13/03 Letter were fully performed.[2]

## II. Love's Objections and Court's Additional Reasoning

In its objection to the Report, Love assigns error to conclusions (1) and (2) above, arguing that Legacy is bound to the arbitration provision even though it is not a signatory to the 8/13/03 Letter. Love also objects to conclusion (3) above, arguing that, even assuming the 8/13/03 Letter was "fully performed," the arbitration provision survived and requires arbitration of the Cross-claim. Love further argues that Judge Joyner erroneously viewed the parties' dealings as two separate transactions rather than one continuous transaction beginning with the 8/13/03 Letter. With respect to Love's objections to conclusions (1) and (2) regarding Legacy not being bound to the 8/13/03 Letter, the Court finds no need to offer reasoning in addition to that provided by Judge Joyner. The Court will, however, explain its reasoning for overruling Love's objection to conclusion (3).

---

[2] For purposes of this analysis, the Court has renumbered and reworded Judge Joyner's enumerated conclusions as set forth in the Report.

An "arbitration provisions in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption." *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998). "When a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute. This is so even if the facts of the dispute occurred after the contract expired." *Id.* However, this presumption in favor of arbitrability disappears if (1) "the parties express or clearly imply an intent to so repudiate post-expiration arbitrability," or (2) "if the dispute cannot be said to arise under the previous contract." *Id.* A dispute arises under a previous contract if it "'involve[s] rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect.'" *Id.* (quoting *United Food & Comm'l Workers Int'l Union v. Gold Star Sausage Co.*, 897 F.2d 1022, 1026 (10th Cir. 1990)).

Even assuming the arbitration provision survived Love's performance of the 8/13/03 Letter, the Court concludes that Legacy's Cross-claim does not "arise under" the 8/13/03 Letter. Legacy's Cross-claim does not involve rights that vested or accrued during the life of the 8/13/03 Letter and then ripened at a later time. Nor does it relate to events that occurred during Love's performance of the 8/13/03 Letter. In Love's own words, the 8/13/03 Letter governed Love's "preparation and filing" of the HUD application. Preparation of this application was a lengthy and significant process, and the application was not submitted until May of 2005. There are a myriad disputes of that could have arisen between Love and Legacy regarding the parties' performance of the 8/13/03 Letter. However, the Cross-Claim is not such a dispute. Legacy's Cross-claim relates to a different

agreement or agreements governing when and under what circumstances Love was required to advance funds requested by Legacy. (*See* First Am. Cross-Claims ¶ 10 (alleging that Love breached the "Loan Agreement" between Love and Legacy and breached its obligation of good faith and fair dealing owed to Legacy in the processing and funding of draw requests made by Legacy).) Legacy is referring to the BLA, which is logical because such agreement governed construction advances. Legacy has therefore shown that its Cross-claim does not arise under the 8/13/03 Letter, and the presumption and rule set forth in *Riley* do not apply.

The Court rejects Love's position that the arbitration provision in the 8/13/03 Letter was intended to govern the entire length and scope of the parties' dealings in relation to the Apartments. The 8/13/03 Letter was itself limited in scope to preparation and filing of the HUD application, and the language in Paragraph 10 cannot be reasonably interpreted to govern the Cross-claim, which arises from an entirely separate agreement or agreements that do not themselves contain an arbitration provision. In addition, the 8/13/03 Letter does not contain any language that would encompass or incorporate future contracts that somehow related back to the 8/13/03 Letter. *See 1mage Software, Inc. v. Reynolds*, 459 F.3d 1044, 1057 (10th Cir. 2006) (affirming district court's decision to compel arbitration where software licensing agreement containing an arbitration provision "specifically provided for the possibility" that licensee would obtain updated version of software in future) (district court reasoned that, although the later agreement did not contain an arbitration provision, the first agreement's arbitration provision applied because the disputed license "had been incorporated into the original agreement's perpetual license").

In sum, even assuming Legacy stepped into the shoes of or is considered the alter ego of Continental, and even assuming the arbitration provision survived Love's performance of the 8/13/03

Letter, the arbitration provision, read in the context of the agreement as a whole, does not mandate arbitration of the Cross-claim. Accordingly, the Objection of Love Funding Corporation ("Love") to Report and Recommendation (Doc. 89) is OVERRULED. Love's motion to compel arbitration (Doc. 57) is DENIED, and Love's related motions to dismiss or stay (Docs. 58 and 59) are DENIED AS MOOT. The Report (Doc. 85), along with the additional reasoning provided in this Opinion and Order, constitute the Order of the Court.

**ORDERED this 2nd day of October, 2008.**

_____
**TERENCE KERN
UNITED STATES DISTRICT JUDGE**