## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **FENIX CONSTRUCTORS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07-CV-712-TCK-SAJ** |
| | ) | |
| **STEVEN ALPHONSO JACKSON,** | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

Before the Court is the Objection of Steven Alphonso Jackson, Secretary of the United States Department of Housing and Urban Development ("Objection") (Doc. 99), wherein HUD objects to Magistrate Judge Sam A. Joyner's Report and Recommendation ("Report") dated November 5, 2008.  In the Report, Judge Joyner recommends that the Court deny HUD's Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion to Dismiss") (Doc. 28) and grant Plaintiff Fenix Constructors, Inc.'s Motion for Leave to File Amended Complaint ("Motion to Amend") (Doc. 34).  Pursuant to Federal Rule of Civil Procedure 72(b), the Court has conducted a *de novo* review of the issues presented in HUD's Motion to Dismiss.  For reasons explained herein, the Court sustains HUD's Objection to the Report and orders additional briefing on the Motion to Dismiss.

## I.    Facts Alleged in Petition and Procedural History

On November 28, 2007, Plaintiff Fenix Constructors, Inc. ("Fenix") initiated this action in the District Court of Tulsa County against Steven Alphonso Jackson, Secretary of the U.S. Department of Housing and Urban Development ("HUD Secretary"); Love Funding Corporation

("Love"), a Virginia corporation that offers commercial mortgage and banking services in Oklahoma; and (3) Legacy at Riverview Foundation ("Legacy"), an Oklahoma non-profit corporation.  In its Petition, Fenix alleges that HUD Secretary, Love, and Legacy joined in a business venture to fund and rehabilitate an apartment complex in Tulsa known as Legacy at Riverview Apartments ("Apartments").  Love loaned money to Legacy for construction work on the Apartments, and HUD Secretary insured the  mortgage note between Love and Legacy.

Fenix completed construction work on the Apartments, and the work was accepted by Legacy, Love, and HUD Secretary.  On or about May 24, 2007, HUD Secretary (1) directed Love to advance funds to Fenix, and (2) asked Love to "amend its insurance claim to include any payment made to Fenix."  (Pet. ¶ 13.)  Love and/or Legacy refused to do so, and Fenix has not received payment for its work.  Fenix's Petition does not set forth specific causes of action.  However, with respect to relief potentially directed against HUD Secretary, the Petition states:

> 16.  Fenix has an equitable lien in all funds which HUD and/or Love committed to the [Apartments];
> 17.  Fenix was induced by the actions of HUD and/or Love to perform work on the [Apartments] and is now entitled to recover the value of that construction work from HUD and/or Love pursuant to the doctrine of quantum meruit;
> 18.  HUD and/or Love received the benefits of the construction work performed by Fenix and have wrongfully refused to pay for Fenix's work.  Fenix is entitled to recover all amounts owed from HUD and/or Love pursuant to the doctrine of unjust enrichment.
> . . .
> 21.  Fenix is owed $381,457.00 . . . for the construction work it performed on behalf of HUD, Love, and Legacy.  Fenix is entitled to judgment against HUD, Love, and Legacy for their wrongful refusal to pay Fenix for the work it performed . . . .

(Pet. ¶¶ 16-18, 21.)  Thus, Fenix seeks an "equitable lien" against funds "committed" to the Apartments and also seeks a money judgment against HUD Secretary on the theories of quantum

meruit and unjust enrichment.  Fenix's Petition does not identify any specific fund from which it seeks recovery from HUD Secretary.

On December 21, 2007, HUD Secretary filed a Notice of Removal stating that this Court had "removal jurisdiction" pursuant to 28 U.S.C. §§ 1441, 1444, and 1446.  (*See* Not. of Removal ¶ 2.) Subsequently, the Court granted HUD Secretary's motion to substitute 28 U.S.C. § 1442 as its basis for removal.  (*See* Doc. 79.)  No party moved to remand the action.

On January 22, 2008, HUD Secretary filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), moving for dismissal of all claims against him based on the doctrine of sovereign immunity.  On February 8, 2008, Fenix responded to the Motion to Dismiss, arguing that a "sue and be sued" provision of the National Housing Act ("NHA"), set forth at 12 U.S.C. § 1702 ("§ 1702"), functions as an express waiver of sovereign immunity.  Fenix also filed its Motion to Amend, requesting that it be allowed to file an Amended Complaint to assert a claim for negligence against HUD Secretary and Love.  The Court referred the Motion to Dismiss and Motion to Amend to Judge Joyner for Report and Recommendation.

On November 5, 2008, Judge Joyner entered his Report, recommending that the Court deny the Motion to Dismiss and grant the Motion to Amend.  In reaching his decision on the Motion to Dismiss, Judge Joyner relied on Judge Gregory Frizzell's rulings in a similar case pending in this district, *Fenix Constructors, Incorporated v. Sheltering Palms-Tulsa I, LLC, et al.*, 06-CV-546-GKF-FHM ("*Sheltering Palms*").  Based on Judge Frizzell's rulings, Judge Joyner reached two conclusions, one regarding an independent basis for subject matter jurisdiction and one regarding sovereign immunity:

> Judge Frizzell found that 12 U.S.C. §1702 constitutes a waiver of sovereign
> immunity  with  respect  to  suits  against  the  Secretary  of  Housing  and  Urban

Development, not an independent grant of jurisdiction. Judge Frizzell determined the issue to be "whether the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331(a) if the disposition of Fenix's" equitable claims requires the application of federal common law, which he answered in the affirmative. This court, while recognizing the split in authority among the circuit courts, recommends adopting Judge Frizzell's conclusions as to this issue.[1]

Thereafter, HUD filed a second motion to dismiss for lack of subject matter jurisdiction [in *Sheltering Palms*], which is basically a second motion to reconsider, urging Judge Frizzell's analysis did not go far enough. HUD urges the court failed to consider its arguments that the waiver of sovereign immunity found under §1702 does not apply where: (1) the alleged actions are not authorized by the National Housing Act;[2] and, (2) any recovery of damages would be paid from the United States Treasury.

Judge Frizzell resolved these remaining issues by Opinion and Order filed October 29, 2008, finding there is insufficient evidence in the record presented on which to base a dismissal. Judge Frizzell accordingly denied the second motion to dismiss.

*The same deficiency of proof is found in the case at bar.* The allegations of the Complaint (removed state court Petition) are sufficient to withstand the motion. For this reason, this court recommends Federal Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction be denied.

(Report, Doc. 98, at 2-3 (footnote omitted) (footnotes and emphasis added).)  Thus, Judge Joyner

denied the Motion to Dismiss because HUD Secretary failed to present sufficient evidence regarding

the "source of funds" issue, which is explained in detail below.  (*See id.*; *see also Sheltering Palms*,

10/29/08 Order ("The Government has argued, but submitted no evidence, that the recovery funds

would come from the Treasury rather than HUD committed funds.  Given the lack of evidence

---

[1]  Judge Joyner's recommendation regarding an independent basis for subject matter jurisdiction pursuant to 28 U.S.C. § 1331 is distinct from the recommendation regarding waiver of immunity.  Judge Joyner's conclusion that 28 U.S.C. § 1331 provides a basis for subject matter jurisdiction, assuming waiver of immunity is established, has not been challenged in the Objection.  The Court concludes that, assuming waiver is established, an independent basis for subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 based on the equitable claims asserted by HUD Secretary, which arise under federal common law.  If the parties desire to make additional arguments on this issue that are not addressed in this Opinion and Order, they may do so in the supplemental briefs.

[2]  This argument has not been raised by HUD Secretary in this case.

4

provided by the Government, the court finds the allegations in the Amended Complaint are sufficient to withstand the Government's motion.").)  Neither Judge Frizzell nor Judge Joyner cited authority holding that a party asserting immunity, rather than a party asserting waiver of such immunity, must come forward with evidence proving that Congress consented to suit in order to prevail on a Rule 12(b)(1) motion to dismiss.

On November 10, 2008, after the Report was issued, HUD Secretary filed a motion to reconsider in *Sheltering Palms*, arguing that Judge Frizzell's Order of October 29, 2008 ("10/29/08 Frizzell Order") did not address several other arguments raised in its motion.  Additionally, in order to address Judge Frizzell's conclusion that HUD did not present sufficient evidence regarding the location of funds relevant to the lawsuit, HUD submitted a declaration that HUD had no funds committed to the project at issue in *Sheltering Palms*.[3]

On November 17, 2008, HUD Secretary filed his Objection to the Report in this case.  On December 11, 2008, Judge Frizzell issued an Opinion and Order in *Sheltering Palms* denying HUD Secretary's motion to reconsider ("12/11/08 Frizzell Order").  Therein, Judge Frizzell concluded:

> Concerning the issue of whether the funds sought are Treasury funds, the government now submits the declaration of HUD's Director, Multifamily Financial Operations Division, Richard E. Braun. [Doc. 98, Ex. A]. Braun states in his declaration that HUD had an account for the Asbury Square Apartments project, FHA project #118-35200, that the account was closed on January 9, 2007, and that HUD presently has no funds associated with, committed to or allocated to the account. This action was filed October 4, 2006. [Doc. No. 2]. Issues pertaining to subject matter jurisdiction must be determined as of the time at which the action was filed. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000); *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1155 (10th Cir. 2005); *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991).  Therefore, the court

---

[3]  The 10/29/08 Frizzell Order was the order expressly relied upon by Judge Joyner in the Report for the conclusion that HUD failed to present sufficient proof of the source of funds requirement.

concludes the funds at issue were, in fact, funds held by HUD at the time of the filing of the suit and subject matter jurisdiction exists.

(*Sheltering Palms*, Doc. 101.)  On December 18, 2008, Fenix filed its response to HUD Secretary's Objection to the Report in this case, arguing that the Court should adopt the reasoning in Judge Frizzell's 10/29/08 and 12/11/08 Orders and deny the Motion to Dismiss.

On January 5, 2009, HUD Secretary filed a second motion to dismiss in *Sheltering Palms*, arguing that "by assuming the existence of non-Treasury funds in the Asbury account, [Judge Frizzell] mistakenly has conflated the existence of an open account for the apartments at issue and the presence of non-Treasury funds in that account. Throughout, it has been HUD's position that it is Plaintiff's burden to establish every facet of its contention that sovereign immunity has been waived." (*Sheltering Palms*, Doc. 102.)  HUD Secretary reserved its other arguments.  Judge Frizzell denied this motion to dismiss by minute order but stated that HUD could file the motion as one for summary judgment.  (*Sheltering Palms*, Doc. 107.)  HUD Secretary has not yet filed a motion for summary judgment in *Sheltering Palms*.

## II.       Rule 12(b)(1) Standard of Review

HUD Secretary, who has been sued in his official capacity, asserts that he enjoys sovereign immunity because the suit is, in reality, one against the United States.  *See Atkinson v. O'Neil*, 867 F.2d 589, 590 (10th Cir. 1989) (holding that suits against federal agents in their official capacities are, in reality, ones taken against the United States and are generally barred by sovereign immunity absent express waiver);[4]  *McQueary v. Laird*, 449 F.2d 608, 610 (10th Cir. 1971) ("The courts shall

_____

[4]  Allegations in the Petition that HUD Secretary owes Fenix money in connection with a HUD-insured housing project indicate that HUD Secretary is sued in his official capacity, and this is not disputed by the parties.

not entertain an unconsented suit which, while nominally against officers of the United States, is in reality against the Government itself."). Assertion of sovereign immunity is a challenge to the Court's subject matter jurisdiction and is properly raised pursuant to Rule 12(b)(1). *See Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir. 2006) ("Absent express waiver of sovereign immunity, federal courts lack subject matter jurisdiction over suits against the United States."); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (holding that district court properly treated motion to dismiss based on doctrine of sovereign immunity as one pursuant to Rule 12(b)(1)); 14 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 3654 (3d ed. 1998) [hereinafter *Federal Practice & Procedure*] ("The natural consequence of the sovereign immunity principle is that the absence of consent by the United States is a fundamental defect that deprives the district court of subject matter jurisdiction."); *id.* at 3655 (explaining same rule in context of suit against federal agencies and officers).

Rule 12(b)(1) motions based on lack of subject matter jurisdiction generally take one of two forms. *Holt*, 46 F.3d at 1002. First, a moving party may make a "facial attack on the complaint's allegations as to subject matter jurisdiction." *Id.* In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Id.* "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* Instead, a court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* In such instances, "a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.*

7

Notwithstanding these general rules, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion "when resolution of the jurisdictional issues is intertwined with the merits of the case." *Id.*  In determining whether resolution of the jurisdictional issues is intertwined with the merits of the case, "the focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute." *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000).  "Rather, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Id.*

First, the Court finds that conversion of HUD Secretary's Motion to Dismiss into a motion based on Rule 12(b)(6) or Rule 56 is not necessary.  The jurisdictional question presented – whether § 1702 functions as a waiver of immunity – does not require resolution of any aspect of Fenix's substantive claims against HUD Secretary, which are that HUD Secretary is liable in equity for money owed to Fenix based on its completion of construction work on the Apartments.  Further, there is no overlap between the jurisdictional statutory question and any substantive statutory question because Fenix's claims sound in equity.  Thus, HUD Secretary's Motion to Dismiss is properly considered under Rule 12(b)(1).

Second, as to whether HUD Secretary asserts a facial or factual attack, HUD originally made a facial attack on the Petition.  In response to HUD Secretary's Motion to Dismiss, Fenix identified § 1702 of the NHA as a waiver of immunity but submitted no evidence.  In his reply, HUD Secretary presented no evidence but did make arguments regarding the location of the funds sought by Fenix.  In his Objection, HUD Secretary argued that his motion should be granted without consideration of evidentiary material.  However, in the event the Court found that HUD Secretary's

8

motion suffered from a "deficiency of proof," as found by Judge Joyner and Judge Frizzell, HUD submitted evidence – a Declaration by Richard Braun ("Braun Declaration") – to address the "source of funds" issue.  In response to such Objection, Fenix still did not present evidence in support of its assertion of § 1702.  Thus, there is a limited evidentiary record before the Court, but neither party urges the Court to consider such record in deciding HUD Secretary's Motion to Dismiss.[5]

### III.    Burden of Proof For Establishing Waiver of Immunity

"The United States, as sovereign, is immune from suit in the absence of its consent."  *Sierra Club v. Lujan*, 972 F.2d 312, 314 (10th Cir. 1992).  Waiver of the traditional sovereign immunity enjoyed by the United States cannot be implied but must be unequivocally expressed by Congress. *Id.*  It is well settled that "[t]he party bringing suit against the United States bears the burden of proving that sovereign immunity has been waived."  *James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992); *see also Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) ("[T]he party asserting jurisdiction bears the burden of proving that sovereign immunity has been waived."); *Federal Practice and Procedure*, § 3655 ("[A] person attempting to sue a federal agency or officer must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States, or that in effect the proceeding is not a suit against the United States.").  Thus, once the government agent or the United States raises immunity, the party asserting a waiver, and not the United States, bears the burden of proving that waiver.

---

[5] For reasons explained in Part V below, the Court will treat HUD Secretary's Motion to Dismiss as a factual attack and will consider evidence in reaching its conclusion.  However, the Court will allow both parties an opportunity to present additional arguments and evidence.

9

### IV.      Section 1702 of NHA

Fenix asserts that § 1702 of the NHA constitutes an express waiver of immunity for purposes

of the claims asserted against HUD Secretary, and Fenix bears the burden of proving that § 1702

applies.

A.      Statutory Language and Supreme Court's Decision in Burr

Section 1702, which is known as the "sue and be sued" provision, provides:

> The Secretary [of HUD] shall, in carrying out the provisions of this subchapter and
> subchapters II, III, V, VI, VII, VIII, IX-B, and X of this chapter, be authorized, in
> his official capacity, to sue and be sued in any court of competent jurisdiction, State
> or Federal.

12 U.S.C. § 1702 (setting forth powers conferred upon HUD Secretary).   In *Federal Housing*

*Administration, Region No. 4 v. Burr*, 309 U.S. 242, 245 (1940), the Supreme Court explained the

broad reach of the NHA's sue and be sued provision:

> [W]e start from the premise that such waivers by Congress of governmental
> immunity in case of such federal instrumentalities should be liberally construed. .
> . . Hence, when Congress establishes such an agency, authorizes it to engage in
> commercial and business transactions with the public, and permits it to 'sue and be
> sued', it cannot be lightly assumed that restrictions on that authority are to be
> implied. . . . [I]t must be presumed that when Congress launched a governmental
> agency into the commercial world and endowed it with authority to 'sue or be sued',
> that agency is not less amenable to judicial process than a private enterprise under
> like circumstances would be.

(emphasis added) (citations and footnotes omitted).   Thus, *Burr* indicates that § 1702 is a broad

waiver intended to cover civil actions against HUD Secretary based on the carrying out of his

administrative functions.   *Burr*, 309 U.S. at 245; *see also United States v. Adams*, 634 F.2d 1261,

1264 (10th Cir. 1980) (explaining that § 1702's waiver applies to "actions involving housing

renovation, mortgage insurance, national mortgage associations, war housing insurance for

investments in rental housing, armed services housing mortgage insurance, national defense housing

insurance, mortgage insurance for land development, and mortgage insurance for group practice facilities").

However, relevant to this case, the Court in *Burr* also stated that "only those funds which have been paid over to the Federal Housing Administration . . . and which are in its possession, severed from Treasury funds and Treasury control, are subject to execution." *Id.* at 250. "To conclude otherwise," the Court reasoned, "would be to allow proceedings against the United States where it had not waived its immunity." *Id.* Thus, *Burr* places a significant limitation on § 1702 by holding that the sue and be sued clause only has effect when the funds sought to be recovered are held in a separate account that is (1) controlled by the government agency functioning as a corporate entity, and (2) "severed from Treasury funds and Treasury control." *Id.* at 251. Lower courts have consistently interpreted this second, limiting aspect of *Burr* as a threshold requirement to application of § 1702, *i.e.*, in order for § 1702 to apply as a waiver of immunity, the source of funds from which a plaintiff seeks recovery must be from separate, severed HUD funds and not from the general treasury of the United States. *See Presidential Gardens Assocs. v. United States ex rel. Sec. of HUD,* 175 F.3d 132, 141 (2d Cir. 1999) ("[A]ny waiver of immunity that was created by the [NHA] is limited to funds under the control of the Secretary of HUD."); *Adams*, 634 F.2d at 1264 (implying that § 1702 would not waive immunity where any recovery "would, of necessity, be fulfilled only by the withdrawal of funds from the Treasury of the United States of America" rather than from "part of the funds originally allocated" to HUD "for the project as approved"); *Indus. Indemnity, Inc. v. Landrieu*, 615 F.2d at 646 (5th Cir. 1980) ("For [the plaintiff's] claim to be against the Secretary, and therefore within the scope of the 'sue and be sued' clause, as opposed to a suit against the United States . . ., any judgment for the plaintiff must be recoverable from funds in the

possession and control of the Secretary that are severed from Treasury funds and Treasury control."); *SS Silberblatt Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 36 (2d Cir. 1979) ("For a claim to be within the scope of the 'sue and be sued' clause, as opposed to a suit against the United States, any judgment for plaintiff must be out of funds in the control of the [HUD] Secretary as distinguished from general Treasury funds."); *Thomas v. Pierce*, 662 F. Supp. 519, 526 (D. Kan. 1987) ("[P]laintiffs may seek recovery from the Secretary [of HUD] only if they can show that a judgment against the Secretary would come from funds in the possession and control of HUD as distinguished from general treasury funds."). *Cf. C.D. Barnes, Inc. v. Grand Haven Hideaway Ltd.*, 406 F. Supp. 2d 801, 814-18 (W.D. Mich. 2005) (explaining that the "agency funds/treasury finds dichotomy" that appears in modern case law derives from *Burr*; questioning whether this should be a threshold inquiry in determining application of § 1702; assuming, without deciding, that it is a threshold requirement).

Thus, in order for § 1702 to apply as a waiver of sovereign immunity, (1) the HUD Secretary must have been carrying out the provisions of the NHA ("coverage requirement"), and (2) the HUD Secretary must possess and control the funds sought by the plaintiff as recovery ("source of funds requirement").  HUD Secretary contends, in his Motion to Dismiss and Objection, that Fenix has failed to satisfy its burden of proof as to the source of funds requirement and therefore failed to satisfy its burden of proof as to the applicability of § 1702.[6]

---

[6] HUD Secretary has indicated his intent to challenge the coverage requirement but has not done so at this time.

B.     Distinguishing Between Agency Funds/Treasury Funds

Although courts agree that the funds sought must be agency funds in order for § 1702 to apply, circuits have taken varying approaches to determining whether funds constitute "agency funds" or "treasury funds" for purposes of § 1702's waiver of immunity.  The Fifth and Second Circuits have indicated that, if funds have been "separated" from the general treasury funds in any way, such funds are in the possession and control of HUD Secretary; therefore, § 1702's waiver applies.  *See e.g., Indus. Indemnity,* 615 F.2d at 646 (general contractor that constructed HUD-insured housing project sued HUD for remainder of construction fee after project owner defaulted and mortgage was assigned to HUD) (holding that § 1702 waiver applied because funds sought were in an account known as the General Insurance Fund ("GIF"), which constitutes a separate fund for purposes of § 1702 analysis); *SS Silberblatt,* 608 F.2d at 36 (general contractor sought payment from HUD for completed construction work) (holding that § 1702 waiver applied because funds sought were in an account known as the Special Risk Insurance Fund ("SRIF") and finding that the SRIF was a separate fund for purpose of § 1702 analysis, even though recovery "would not be paid out of funds originally and specifically earmarked for the . . . project"); *see also C.D. Barnes, Inc.*, 406 F. Supp. 2d at 804-05, 814-18 (general contractor that constructed HUD-insured housing project sued HUD for various forms of equitable relief) (following Fifth Circuit's holding in *Industrial Indemnity*, concluding that the plaintiff "has shown that the Secretary [of HUD] has in his control a fund from which any judgment in favor of [plaintiff] may be satisfied and which has been severed from Treasury funds, namely, the GIF") (reasoning that "to hold that public monies can never be used to satisfy a judgment obtained by a waiver under a sue and be sued clause would render such clauses ineffectual").  *Cf. Trans-Bay Eng'rs and Builders v. Hills*, 551 F.2d 370, 376

13

(D.C. Cir. 1976) (general contractor sued HUD to recover sums retained by HUD as a "holdback" during construction of a housing project) (finding that § 1702's waiver applied without discussion of source of funds for potential judgment).

The Fourth, Ninth, and Sixth Circuits have taken a stricter approach to defining "agency funds," indicating that funds originating in the public treasury retain their status as treasury funds even after they have been appropriated to HUD Secretary for certain purposes; therefore, § 1702's waiver does not apply. *See, e.g., Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 473-74 (4th Cir. 1983) (operator of low-income housing facilities received several types of federal subsidies pursuant to annual contributions contract ("ACC") with HUD; after HUD withheld ACC funds based on operator's failure to execute an amendment to its ACC, operator sued HUD seeking to enjoin HUD from withholding subsidies) (holding that "funds appropriated to HUD for payment of operating subsidies clearly originate in the public treasury, and they do not cease to be public funds after they are appropriated" and that there was no separate fund within HUD's exclusive control that did not originate in the public treasury); *Marcus Garvey Square, Inc. v. Winston Burnett Constr. Co.*, 595 F.2d 1126, 1131-32 (9th Cir. 1979) (general contractor filed counterclaim against HUD seeking balance allegedly due under construction contract) (holding that, although there was a time that the potential source of funds – undistributed mortgage proceeds – were "within the reach of the federal defendants," such proceeds "ceased to exist as a separate, identifiable fund" when HUD chose to take assignment of mortgage rather than reducing principal of mortgage by undisbursed amounts) (further reasoning that, if counterclaimant prevailed on its claim and recovered part of the undisbursed proceeds, "the recovery must come from the treasury"); *Hous. Prods. Co. v. Flint Hous. Comm'n*, No. 99-1551, 2000 WL 1720612, at * 2 (6th Cir. Nov.

7, 2000) (following *Portsmouth* and reasoning that "even funds appropriated to HUD that clearly originate in the public treasury – as opposed to private insurance funds – do not cease to be public funds after they are appropriated"); *Reynolds Assocs. v. Kemp*, No. 91–2255, 1992 WL 207747, at * 4 (4th Cir. Aug. 28, 1992) (following *Portsmouth* and, more specifically, *Marcus Garvey* in holding that, where plaintiff did not allege that damages would come from any specified fund whatsoever, any recovery "would necessarily reach general treasury funds") (noting that, in some cases, courts must "engage in the delicate determination of the character of a particular fund," *i.e.*, whether HUD's treatment of funds causes the funds to lose their "separate" character); *see also Carlyle Gardens Co. v. Del. State Hous. Auth.*, 659 F. Supp. 1300, 1306 (D. Del. 1987) (operator of housing complex sued HUD alleging it had wrongfully withheld Section 8 housing assistance funds from state housing authority) (in absence of Third Circuit authority, following *Portsmouth* and holding that funds in segregated, reserved HUD account for Section 8 assistance program nonetheless retained their character as general treasury funds).

There is no clear Tenth Circuit authority explaining how to distinguish between agency funds and general treasury funds. In *Adams*, the Tenth Circuit held that § 1702's waiver did not apply because the suit – a contract suit seeking losses and damages caused by HUD Secretary's failure to make home sites available in a proper manner – did not satisfy the coverage requirement, *i.e.*, HUD Secretary was not, in committing the alleged acts, carrying out the provisions of the NHA. *Adams*, 634 F.2d at 1265. At the beginning of the decision, however, the court discussed the source of funds requirement:

> At the outset it is important to clarify the appellate posture of this case. This is not an action against appellees, the United States of America and HUD, for specific monies due and owing appropriated for a particular project. *CDI has not, at any time during the course of the state and federal district court proceedings, and does not*

*now, allege that appellees have failed or refused to pay it for its work completed on the project, or that the monies it presently seeks are part of the funds originally allocated for the project as approved.* Rather, CDI's action was at the beginning, and has remained throughout, one for compensatory damages, based on the alleged breach of appellees' contractual duties and obligations in failing to certify, approve, and make available home sites on a timely basis. *As such, recovery of any damages by CDI would, of necessity, be fulfilled only by the withdrawal of funds from the Treasury of the United States of America.*

*Id.* at 1264 (emphasis added). Thus, the Tenth Circuit has at least implied that, if a plaintiff seeks "part of the funds originally allocated for the project as approved," such funds may be considered differently than funds that were never appropriated to HUD Secretary at all.

C.      Parties' Allegations/Evidence Regarding Source of Funds

Fenix's Petition does not specifically identify any source of funds but does assert "an equitable lien in all funds which HUD [Secretary] and/or Love committed to the [Apartments]" and further seeks a $381,457.00 money judgment against HUD Secretary. (Pet. ¶¶ 16, 21.) Thus, accepting the allegation as true, Fenix seeks an equitable lien in the total amount of $381,457.00 on certain funds "committed" to the Apartments and also seeks a money judgment from funds "committed" to the Apartments. These allegations do nothing, however, to shed light on the location of funds that are being sought by Fenix, and Fenix's briefs offer no further explanation or identification of the relevant funds.

In its reply in support of its Motion to Dismiss, HUD Secretary stated in the argument section of its brief that:  (1) the note and mortgage held by HUD Secretary in connection with the Apartments was sold at auction; and (2) the proceeds of the note and mortgage were deposited into the GIF.   (*See* Reply in Support of Mot. to Dismiss 5.)  In its Objection, HUD continued to argue that "the note and mortgage have been sold at auction and the proceeds have deposited into the [GIF]." (Gov't's Obj. to Report 7.)  Because Judge Joyner denied the Motion to Dismiss based on

16

HUD Secretary's "deficiency of proof," HUD Secretary also submitted the Braun Declaration stating that:  (1) the HUD account associated with the Apartments ("Account 118-35207") was closed on September 30, 2007; and (2) HUD Secretary no longer holds any funds connected to the Apartments.  (*See* Ex. C to Gov's Obj. to Report.)[7]  Fenix has not presented any evidence refuting HUD Secretary's evidence that the relevant note was sold and the proceeds deposited into the GIF.

D.    Parties' Arguments

In its reply in support of its Motion to Dismiss and its Objection, HUD Secretary made various arguments in support of dismissal:  (1) Fenix bears the burden of proving the source of funds requirement, and Fenix failed to do so by the allegations in its Petition or any other evidence; (2) in the absence of Tenth Circuit authority, the Court should follow the stricter interpretation of "agency funds" and hold that government funds remain general treasury funds even after they have been appropriated to HUD; (3) the nature of the statutory program pursuant to which HUD Secretary  insured the loan in this case, 12 U.S.C. § 1714(d)(4), renders the more lenient line of cases factually distinguishable; and (4) if the Court considers the evidence in the record, Fenix failed to satisfy the source of funds requirement because (1) the note and mortgage on the Apartments have been sold at auction and the proceeds distributed into the GIF, and (2) the HUD account associated with the Apartments, designated FHA project # 118-35207, was closed on September 30, 2007.

In its response to HUD Secretary's Motion to Dismiss, Fenix did not mention or address the source of funds requirement but instead merely argued that the type of claims at issue, which

---

[7]  Although HUD Secretary submitted the Braun Declaration out of an abundance of caution, HUD Secretary urged the Court to rule on its Motion to Dismiss based on the pleadings and briefs.

17

involve mortgage insurance under Subchapter II of the NHA, are covered by § 1702.[8]  In its

response to HUD Secretary's Objection, Fenix still did not identify, or even attempt to identify or

suggest, the source of funds from which it seeks recovery.  Nor did Fenix explain why the

allegations in its Petition, if accepted as true, tend to prove that a recovery will be against non-

treasury funds.  Instead, Fenix argued that because an equitable remedy is sought, it need not plead

or otherwise identify a relevant source of funds.  (Pl.'s Resp. to Obj. 3-4.)  Thus, rather than

identifying, explaining, or providing evidence regarding the relevant source of funds, Fenix argues

that it need not do so as a matter of law.

**V.     Report's Conclusion Regarding HUD's "Deficiency of Proof" is in Error**

The Report recommends denial of the Motion to Dismiss, finding that HUD Secretary's

motion suffered from a "deficiency of proof."  The Court finds this conclusion to be in error.  HUD

Secretary raised sovereign immunity from suit by a Rule 12(b)(1) motion, and HUD Secretary

attacked Fenix's Petition as failing to establish a waiver of immunity.  This triggered Fenix's

obligations to satisfy its burden of proving that its claims are encompassed by an express waiver of

immunity, either by (1) relying on the allegations in its Petition and explaining how such

allegations, if proven, satisfy § 1702's source of funds requirement, or (2) offering further

evidentiary facts illuminating the allegations in its Petition.  As explained above, it is Fenix, and not

HUD Secretary, that bears the burden of proving the applicability of § 1702, which includes proving

both the coverage requirement and the source of funds requirement.  However, Fenix's Petition does

not identify any statutory waiver whatsoever, let alone set forth allegations establishing or tending

---

[8]  This issue is not disputed for purposes of this Motion to Dismiss.  Instead, the dispute turns
on the source of funds requirement.

18

to establish the source of funds requirement.  In its response brief, Fenix identified § 1702 as a statutory waiver, but Fenix did not offer proof regarding the requirements of § 1702 or explain how, accepting its allegations as true, it could potentially prove the requirements of § 1702.  Instead, Fenix's Petition and briefing are silent as to how its allegations, if proven, satisfy the source of funds requirement.  Under these circumstances, HUD Secretary is correct that it had no obligation to come forward with evidence regarding the source of funds requirement.  It properly raised immunity, and Fenix failed to plead or offer evidence regarding all the relevant § 1702 requirements, including the source of funds requirement.  Accordingly, the Report's conclusion that HUD Secretary's motion to dismiss must be denied based on its failure to present sufficient evidence regarding the source of funds requirement is in error, and HUD Secretary's Objection is sustained.

The next question is whether the Court should, as urged by HUD Secretary, take the next step and *grant* his Motion to Dismiss based on Fenix's failure to satisfy its burden of proof.  The Court agrees with HUD Secretary that a party asserting § 1702 waiver must prove that the funds from which it seeks recovery are not in possession of the United States.  At this stage of the proceedings, Fenix has not proven that the relevant source of funds is in the possession of HUD Secretary since it has not identified the funds at issue or even offered the Court an explanation as to why its claims, if successful, will result in recovery from agency funds rather than treasury funds.  At least one court has found that such a failure is grounds for dismissal.  *See Thomas*, 662 F. Supp. at 526 (granting motion to dismiss and holding that plaintiffs failed to establish burden of proof in establishing waiver because they "failed to even suggest a possible source of funds").

However, this case is in a unique procedural posture because, in the midst of the parties' briefing before this Court, the parties received contrary rulings in another case pending in this district.   Such decisions indicated that Fenix's allegations were sufficient to survive HUD Secretary's Motion to Dismiss in the absence of countervailing evidence provided by HUD Secretary.  Under these circumstances, the Court finds it most prudent, and most equitable, to allow supplemental briefs and the presentation of additional evidence regarding the source of funds requirement rather than to grant HUD Secretary's Motion to Dismiss at this juncture.  In addition, as shown in Part III.B above, the source of funds issue generally requires analysis of the underlying facts, the statutory program at issue, and the specific source of funds from which recovery is sought – *e.g.*, undisbursed mortgage proceeds, the GIF, the SRIF, or some other account.  The difficult legal question becomes, once the source of funds is identified, whether that source of funds will be classified as agency funds or treasury funds.  Before addressing this legal question and determining which line of cases to follow, the Court desires a more developed evidentiary record.  Therefore, based on the unique procedural circumstances and the lack of controlling Tenth Circuit law, the Court finds: (1) it is most equitable to allow Fenix an additional opportunity to satisfy its burden of proof, and (2) the Court will consider evidence, including the Braun Declaration and any other evidence presented, before deciding which line of circuit decisions to follow in this case.[9]

---

[9]  HUD Secretary urges the Court to hold that the funds in question are treasury funds as a matter of law, without regard to the actual location of the funds, based on certain cases indicating that monies appropriated to HUD always retain their character as treasury funds.  This argument is rejected, and the Court will consider evidence before deciding which line of cases should be followed.  Even in the circuit cases cited by HUD, courts had some type of evidentiary record regarding the location and nature of the funds sought.  *See, e.g.*, *Marcus Garvey Square, Inc. v. Winston Burnett Constr. Co.*, 595 F.2d 1126, 1131-32 (9th Cir. 1979) (holding that, although there was a time that the potential source of funds – undistributed mortgage proceeds – were "within the reach of the federal defendants," such proceeds "ceased to exist as a separate,

**VI.    Fenix's Legal Argument That It Need Not Prove Source of Funds Requirement Is Rejected**

To avoid any further briefing on the issue, the Court rejects Fenix's argument that the "source of funds" requirement is somehow not relevant because Fenix seeks equitable remedies, *i.e.*, because its money judgment would be based on the doctrines of quantum meruit or unjust enrichment.  As set forth above in Part III.B, the Court has conducted exhaustive review of case law addressing § 1702's source of funds requirement, and the Court located no case indicating that it is not necessary to analyze the source of funds requirement when a potential money judgment would be based on an equitable theory of recovery.

Further, Fenix's reliance on *SS Silberblatt* for its contention that a plaintiff seeking equitable remedies need not plead and/or prove the source of funds requirement is misplaced.  In fact, the plaintiff in *SS Silberblatt* sought equitable remedies, and the Court expressly addressed the source of funds requirement.  *See SS Silberblatt*, 608 F.2d at 36 (holding that "[s]ince the availability of funds to satisfy any judgment  . . . meets [*Burr*'s] criteria, the present suit must be treated as one against the Secretary").  The quotation from *SS Silberblatt* relied upon by Fenix, which provides that a plaintiff need not establish the existence of a "res" in order to assert certain equitable remedies, is in the section of the decision addressing whether the defendant was entitled to summary judgment on an equitable claim, not whether sovereign immunity attached.  *See SS Silberblatt*, 608 F.2d at 40 ("[T]he availability of a remedy for appellant is not dependent on the existence of such proceeds as a Res to be subject to an equitable lien.").  The Second Circuit was careful to note the distinction between determining sovereign immunity and determining the substantive claim:

identifiable fund" when HUD chose to take assignment of mortgage rather than reducing principal of mortgage by undisbursed amounts).

21

> The problem of identifying the source of funds from which a potential judgment would be paid, in order to insure that the suit lies within the waiver of sovereign immunity . . ., is distinct from that of locating a Res to which an equitable lien may be attached.  The former is resolved by determination that the Secretary has control over some funds from which a judgment could be paid; the latter requires identification of a fund which is allocable by agreement or otherwise to satisfy the obligation. . . . When a contractor sued in quantum meruit, however, the monies that would be used to satisfy a judgment may not necessarily be drawn from a fund which prior to the suit had been identified with the particular project which is the subject of the action.

*SS Silberblatt*, 608 F.2d at 38 n.17.  Therefore, while some language in *SS Silberblatt* may indicate that Fenix had no obligation to plead a "res" in order to survive a Rule 12(b)(6) motion as to certain of its equitable claims, this language does not indicate that Fenix has no obligation to prove the source of funds requirement in order to survive a Rule 12(b)(1) motion asserting sovereign immunity from suit.[10]

## VIII.   Conclusion

This Order constitutes notice to the parties that (1) Fenix bears the burden of proof as to § 1702's coverage and source of funds requirements; (2) the Court will consider the Braun Declaration, as well as any additional evidence presented, before deciding whether § 1702 waives immunity in this case; and (3) the parties should make all arguments and submit all evidence that they wish the Court to consider as to the existence of a waiver of sovereign immunity.  For the convenience of the Court in reviewing one set of briefs in resolving the issue, the Court orders the

---

[10]  Fenix also argues that it is "inconsistent" for the United States to remove the case to federal court and then assert the doctrine of sovereign immunity.  However, United States' attorneys "possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court."  *United States v. Murdock Mach. and Eng'g Co. of Utah*, 81 F.3d 922, 931 (10th Cir. 1996) (explaining in parenthetical that U.S. Attorney could not waive sovereign immunity of the United States by removing case to federal court).  Therefore, there is no "inconsistency" or procedural waiver of immunity based on removal.

parties to reassert all arguments that are not expressly rejected in this Order and reattach evidence submitted with  previous briefs, in addition to making any new arguments and attaching any new evidence.  Briefs shall be limited to twenty-five pages in length.

The Objection of Steven Alphonso Jackson, Secretary of the United States Department of Housing and Urban Development (Doc. 99) is SUSTAINED, and the Report (Doc. 98) is REJECTED as to its ruling on HUD Secretary's Motion to Dismiss.  Instead, the Court orders additional briefing on HUD Secretary's Motion to Dismiss, and such motion remains pending.  The parties are ORDERED to submit a joint proposed schedule to govern the additional briefs, and any necessary discovery on the jurisdictional issues presented, no later than Friday, March 27, 2009.

There is no objection or briefing regarding Judge Joyner's recommendation to grant Fenix's Motion to Amend, and the Report (Doc. 98) is ACCEPTED as to its ruling on Fenix's Motion to Amend.  Accordingly, Fenix's Motion for Leave to File Amended Complaint (Doc. 34) is GRANTED.  Fenix's Amended Complaint shall be filed no later than Friday, March 27, 2009.  The Order entered December 17, 2008, which strikes all deadlines and orders a Joint Status Report ten days following the Court's ruling on HUD Secretary's Motion to Dismiss, remains in effect.

**SO ORDERED this 19th day of March, 2009.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**