**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **FENIX CONSTRUCTORS, INC.,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **SHAUN DONOVAN,** ) <br> **Secretary of the United States** ) <br> **Department of Housing and Urban** ) <br> **Development,** ) <br> **LOVE FUNDING CORPORATION**, and ) <br> **LEGACY AT RIVERVIEW FOUNDATION,** ) <br> ) <br> **Defendants.** ) | Case No. 07-CV-712-TCK-PJC |

**OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment of Plaintiff Fenix Constructors, Inc. on Counterclaim of Defendant Legacy at Riverview Foundation (Doc. 80).

**I.     Factual Background**

On September 29, 2005, Plaintiff Fenix Constructors, Inc. ("Fenix"), as contractor, and Defendant Legacy at Riverview Foundation ("Legacy"), as owner, entered into a contract ("Contract") to perform construction work on the Legacy at Riverview Apartments ("Apartments"). On January 13, 2006, Elinor Conroy ("Conroy"), President of Legacy, sent a letter to Larry Kester ("Kester"), an employee of Architects Collective,[1] initiating a claim against Fenix pursuant to Section 4.3 of the Contract:

> By means of this letter and pursuant to Section 4.3 of the [Contract], [Legacy] hereby initiates a claim against [Fenix], relating to the improper, deficient, and negligent

---

[1] The letter was sent to Architects Collective because the Contract designates Architects Collective as Legacy's representative and authorizes Architects Collective to, *inter alia*, accept or reject Fenix's construction work on Legacy's behalf.

> construction practices that have allowed severe water penetration into at least 26 apartment buildings, affecting approximately 270 apartment units at the [Apartments], causing severe property damage and rendering the affected units uninhabitable. [Legacy] requests that you commence an appropriate review of this claim against [Fenix] and take one or more of the appropriate actions set forth in Section 4.4.2 of the [Contract].

(Ex. 2 to Fenix's Mot. for Summ. J.)  On January 16, 2006, Kester sent a letter to Bill Owen, of Fenix, stating:

> In accordance with Article 4.3 of the [Contract], please accept this notice of [Legacy's] intent to file a claim for damages associated with the recent rain and snow and water infiltration, caused by the actions of [Fenix]. [Fenix] has failed to exercise proper precautions to prevent damage or endangerment of the existing project . . . .

(Ex. 3 to Fenix's Mot. for Summ. J.)  On May 6, 2006, Conroy sent a "Cease and Desist Order" ("C&D Order") by email to Fenix and Architects Collective stating that "no further demolition be performed . . . until [the relevant parties] completed a plan to make further demolition and construction water tight."  (C&D Order, Ex. B-1 to Legacy's Resp. to Fenix's Mot. for Summ. J.)

On October 27, 2006, Conroy, on behalf of Legacy, executed a Property Damage Release ("Release").  For consideration paid by Fenix in the amount of $240,189.40, Legacy released Fenix from:

> any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which [Legacy] may now has/have or which may hereafter accrue *on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen property damage* and the consequences thereof resulting or to result from *the occurrence on or about the 23rd day of December 2005*, at or near [the Apartments]."

(Release, Ex. 4 to Fenix's Mot. for Summ. J (emphasis added).)  Thus, the Release language relates specifically to "the occurrence" on or about December 23, 2005 ("12/23/05 Occurrence"). Subsequent to the Release, on December 12 and 22, 2006 and January 11, 2007, Architects Collective approved certain pay requests submitted by Fenix, stating:

2

> I certify, based on my on-site observations (or those of my authorized representative) and the data comprising this requisition, that the Work progressed to the point indicated; that to the best of my knowledge, information and belief the Work is in accordance with the Contract Documents; and that the Contractor is entitled to payment of the amount certified.

(*See* Contractor's Requisitions, Exs. 5-7 to Fenix's Mot. for Summ. J (collectively "Certifications").)

On November 28, 2007, Fenix sued Legacy and other entities for amounts due for construction work on the Apartments. On April 18, 2008, Legacy filed its First Amended Counterclaims ("Counterclaims") against Fenix, alleging that Fenix failed to complete its construction in a workmanlike manner, thereby exposing Legacy to damages. Legacy's three Counterclaims are for breach of contract, breach of implied covenants, and negligence. As to the breach of contract and breach of implied covenant claims, Legacy seeks $496,989.80 for "loss of rental income." (First Am. Counterclaims ¶¶ 14, 21.) As to the negligence claim, Legacy seeks damages in excess of $75,000.

Fenix moved for summary judgment on the Counterclaims, arguing that all Counterclaims are barred by the Release. Legacy argued in response that the Counterclaims are not barred by the Release and that factual questions exist regarding the scope of the Release in relation to the Counterclaims. Specifically, Legacy contends that the Release does not entitle Fenix to summary judgment because: (1) the Release covers only the 12/23/05 Occurrence and does not cover other specific occurrences of weather exposure occurring both before and after December 23, 2005; and (2) the Release covers only property damages and does not cover damages in the form of lost rental income.

**II.     Analysis**

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

    A.     Other "Occurrences"

Drawing all reasonable inferences in favor of Legacy, the Court finds that Fenix is not entitled to summary judgment on Legacy's Counterclaims. The Release language is limited by its terms to damages resulting from the 12/23/05 Occurrence. Conroy testified that there were other specific "occurrences" of weather exposure that form the basis of Legacy's Counterclaims and that were not included in the Release. Specifically, Conroy testified that were three other specific occurrences of weather exposure: (1) "[o]n or about the Thanksgiving day weekend in year 2005," (2) "[o]n or about January 4th 2006," and (3) "[o]n or about March and/or April 2006." (Conroy Aff., Ex. B to Legacy's Resp. to Fenix's Mot. for Summ. J.) These three other "occurrences" took place *before* the Release was executed. In the Court's view, it seems unlikely that Legacy would have been satisfied with a repair job that fixed damage resulting from the 12/23/05 Occurrence but

did not also fix damages resulting from three other "occurrences."  Nonetheless, the plain language of the Release is limited to the 12/23/05 Occurrence, and Conroy's testimony creates a question of fact as to whether the Counterclaims, which potentially seek damages resulting from other "occurrences" of weather exposure, are covered by the scope of the Release.[2]

To the extent Fenix's motion is based on the Certifications, the Court also rejects this argument.  Although Fenix has shown that Architects Collective certified Fenix's work in December 2006 and January 2007 by approving payment requests, Fenix has not shown that the Certifications function as a legal bar to the Counterclaims.  Fenix has not pointed the Court to any contract provision that prevents Legacy from bringing suit based on work Architects Collective previously approved on behalf of Legacy.  Further, there is not a sufficient factual record for the Court to conclude that the work approved by the December 2006 and January 2007 Certifications encompass the work about which Legacy complains in this lawsuit.  Nor has Fenix argued that estoppel or other equitable doctrines prevent Legacy from asserting the Counterclaims in light of the Certifications. Accordingly, the Court concludes that Fenix is not entitled to summary judgment based on the Release or the Certifications.

B.    Lost Rental Income

In its response brief, Legacy raised the purely legal question of whether the Release covers damages in the form of lost rental income.  (*See* Legacy's Resp. to Fenix's Mot. for Summ. J. 9 ("Legacy believes that the proper interpretation of the [Release] is limited to property damage from

---

[2] Fenix failed to file a reply brief.  Fenix has therefore not controverted Conroy's testimony or offered any arguments in response to her testimony.  For example, Fenix has not argued or presented evidence that (1) the Release actually covered other "occurrences," or (2) at the time of signing the Release, Fenix was not aware of any other "occurrences" that needed to be included in the Release.

the [12/23/05 Occurrence]" and that the Release "does not include 'lost rent.'").) In order to eliminate the need for further pretrial arguments or motions, the Court will rule on this legal issue.

Based on the plain language of the Release, the Court concludes that the Release bars any claim for lost rental income, at least to the extent the claim for lost rental income "grew out of" the 12/23/05 Occurrence.[3] Despite its title of "Property Damage Release," the text of the Release covers more than claims for property damage. It covers all "claims actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which [Legacy] . . . may hereafter accrue on account of or in any way growing out of . . . property damage and the consequences thereof . . . ." (Release, Ex. 4 to Fenix's Mot. for Summ. J. (emphasis added).) Legacy's claims for lost rental income are based on tenants' vacating their apartments due to weather-related damage caused by Fenix's negligent work. This type of claim for lost rental income clearly "grows out" of the original property damage.

The Motion for Summary Judgment of Plaintiff Fenix Constructors, Inc. on Counterclaim of Defendant Legacy at Riverview Foundation (Doc. 80) is DENIED. The Court holds: (1) the Release does not entitle Fenix to judgment as a matter of law because Legacy has presented evidence that the Counterclaims encompass damages resulting from occurrences other than the 12/23/05 Occurrence; (2) the Certifications do not entitle Fenix to judgment as a matter of law because Fenix has not shown that the Certifications function as a release or cover the precise work at issue in the Counterclaims; and (3) at a minimum, the Release bars recovery for any lost rental income that "accrue[d] on account of or in any way gr[e]w[] out of" the 12/23/05 Occurrence.

---

[3] If Fenix ultimately shows that the Release covered any other alleged "occurrences" that had occurred prior to execution of the Release, lost rental income stemming from such occurrences would also be covered by the Release.

**ORDERED THIS 15th day of September, 2009.**

_____
**TERENCE KERN
UNITED STATES DISTRICT JUDGE**